IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    and the States of CALIFORNIA,<br>    DELAWARE,<br>    FLORIDA,<br>    ILLINOIS,<br>    INDIANA,<br>    MASSACHUSETTS,<br>    NEW JERSEY,<br>    NEW MEXICO,<br>    NEW YORK,<br>    NORTH CAROLINA,<br>    OKLAHOMA,<br>    TENNESSEE,<br>    VIRGINIA; and<br>    CITY of CHICAGO | : | Case No. |
| | : | |
| | : | |
| | : | **COMPLAINT** |
| | : | |
| | : | **Jury Trial Demanded** |
| | : | |
| | : | |
| | : | **Filed Under Seal Pursuant to** |
| | : | **29 U.S.C. § 3730(b)(2)** |
| | : | |
| Plaintiffs, | | |
| | : | **Case: 1:10-cv-01192** |
| *ex rel.* | : | **Assigned To : Bates, John D.** |
| | : | **Assign. Date : 7/15/2010** |
| GREGORY RUDOLPH | : | **Description: General Civil** |
| 20033 Detroit Road, # 203 | : | |
| Rocky River, OH 44116 | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | |
| | : | |
| TREMCO, INC. | : | |
| 3735 Green Road | : | |
| Beachwood, OH 44122 | : | |
| | : | |
| and | : | |
| | : | |
| RPM INTERNATIONAL, INC., | : | |
| 2628 Pearl Road | : | |
| Medina, OH 44256-7623 | : | |
| | : | |
| Defendants. | : | |
| | : | |
| _____ | : | |

*Qui tam* Relator Gregory Rudolph, through his undersigned attorneys and on behalf of the United States of America, brings this action against Defendants Tremco, Inc. and RPM International, Inc., to recover damages and civil penalties arising from false or fraudulent statements, records and claims made or caused to be made by Defendants or their agents and employees to the United States Government ("the Government" or "the Federal Government") and state and local governments, including the following: California, Delaware, Florida, Illinois, Indiana, Massachusetts, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Tennessee, Virginia, and the City of Chicago (collectively, "State and Local Governments"). Defendants violated the pricing requirements of their General Services Administration ("GSA") contracts and other Government contracts, misrepresented the quality of goods in a manner that allowed Tremco to sell the same goods at higher prices than identical, lower-priced goods, and also defrauded the Federal Government and State and Local Governments by selling them defective roofing products and installing defective roofs on Federal Government and State and Local Government buildings.  Relator reported these violations to the Office of the Inspector General for GSA in February 2010.

On behalf of the United States of America and the above-referenced State and Local Governments, Relator alleges for his Complaint against Defendants as follows:

## INTRODUCTION

1.     This is an action to recover damages and civil penalties on behalf of the United States Government and the State and Local Governments arising from false statements, records and claims made and presented or caused to be made and presented by Defendants and their agents and employees in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, as amended, and analogous provisions of State and Local laws, including the following:

2

a.   California False Claims Act, Cal. Gov't Code § 12650, *et seq.*;

b.   Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201, *et seq.*;

c.   Florida False Claims Act, Fla. Stat. § 68.081, *et seq.*;

d.   Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175/1, *et seq.*;

e.   Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5, *et seq.*;

f.   Massachusetts False Claims Act, Mass. Gen. Laws Ch. 12, § 5(A), *et seq.*;

g.   New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1, *et seq.*;

h.   New Mexico Fraud Against Taxpayers Act, N.M. Stat. § 44-9-1, *et seq.*;

i.   New York False Claims Act, N.Y. CLS St. Fin. § 187, *et seq.*;

j.   North Carolina False Claims Act, N.C. Gen. Stat. § 1-605, *et seq.*;

k.   Oklahoma False Claims Act, Okla. Stat. Tit. 63 § 5053, *et seq.*;

l.   Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101, *et seq.*;

m.   Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1, *et seq.*;

n.   City of Chicago False Claims Act, Chicago Municipal Code, § 1-21-010, *et seq.*

(collectively, "State and Local statutes").

2.      The False Claims Act provides that any person who knowingly submits or causes to be submitted a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty of not less than $5,500 and not more than $11,000 for each such violation, plus three times the amount of the damages sustained by the Government.  Liability attaches both to the acts of knowingly seeking unwarranted payment from the Government and knowingly

3

creating or causing to be created false statements or records to conceal, avoid, or decrease an obligation to pay or transmit money to the Government.  The False Claims Act provides that any person having information regarding a false or fraudulent claim against the Government may bring an action for himself and the Government and share in any recovery.

3.     Relator Gregory Rudolph seeks to recover False Claims Act damages and civil penalties arising from Defendants' presentation of false claims, records, and statements to the Government and its agents in connection with Defendants' claims for payment for goods and services provided pursuant to Defendants' contracts with the GSA and other contracts with the Government.  Defendants knowingly violated the False Claims Act by the following acts, *inter alia*:

a.     Failing to provide the Government with price discounts provided to private and other non-federal government customers, thereby depriving the Government of the most favorable pricing;

b.     Marketing expensive materials to Government purchasers without disclosing the availability of lower-cost, identical materials also manufactured and sold by Defendant Tremco;

c.     Installing or causing to be installed roofing products and systems with known defects on Government buildings;

d.     Over-specifying roofing materials for Government jobs beyond what is required to fulfill the Government purchasers' objectives, resulting in substantial overcharges for roofing materials;

e.     Unnecessarily utilizing Tremco's subsidiary as a general contractor and partnering with certain subcontractors in order to inflate costs and lock-out competition; and

f.     Selling defective roofing products, materials, and systems to the Government directly and, indirectly, through roofing contractors.

4.      In addition, Relator Gregory Rudolph seeks to recover damages and civil penalties arising from Defendants' presentation of false claims, records, and statements to the State and Local Governments and their agents and employees in connection with Defendants' actions in selling defective roofing products, materials, and systems to the State and Local Government directly and, indirectly, through roofing contractors.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the later of which confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730.

6.      This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process, and because Defendants transacted business in this District and committed acts proscribed by 31 U.S.C. § 3729 in this District.

7.      Venue is proper in the District of Columbia pursuant to 31 U.S.C. § 3732(a) because Defendants transacted business in this District and committed acts proscribed by 31 U.S.C. § 729 in this District.

8.      In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed under seal and will remain under seal for a period of at least sixty (60) days from its filing date and, where applicable under State and Local Law, for a longer period as specified by statute, and shall not be served upon the Defendants until after the Court so orders.

## PARTIES

9.      Relator Gregory Rudolph is a United States citizen and a resident of Ohio.  He was an employee of Tremco, Inc. for more than 20 years.  At the time when he resigned from

Tremco in April 2009, Mr. Rudolph was the Vice President of Product Systems.  Mr. Rudolph

now operates his own roofing and waterproofing business. Relator Rudolph bases the allegations

in his complaint upon his inside experience working at Tremco and his first-hand experience

with Tremco's contracting processes and roofing products.

10.     Defendant Tremco, Inc. ("Tremco") is an Ohio-based company located at 3735

Green Road, Beachwood, Ohio.  Tremco provides roofing and weatherproofing services,

including roofing restoration and repair.  Tremco is also a major manufacturer and supplier of

roofing materials.  Tremco has a comprehensive federal government program and provides goods

and services to the Government, including through a GSA Federal Supply Schedule.

11.     Defendant RPM International, Inc. ("RPM") is a multi-national publicly-traded

holding company headquartered at 2628 Pearl Road, Medina, Ohio. Tremco is a wholly-owned

subsidiary of RPM and is one of RPM's leading industrial companies.

<b><u>FACTUAL ALLEGATIONS</u></b>

**A.     Tremco's Government Contracts**

12.     Tremco participates in a government program linking federal agencies with

non-governmental entities to provide the Federal Government with the "best value" when it

purchases goods and services that are also routinely sold to private customers.  In order to ensure

that the Government is not overcharged, the GSA negotiates Federal Supply Schedule contracts

and other contracts with suppliers of commercial products and services, such as Tremco.

13.     Tremco's federal contracts are subject to the requirement of the Federal

Acquisition Regulations ("FAR") that there be full and open competition in the Government's

purchases of commercial products and services.  48 C.F.R. § 6.101.  Likewise, all of Tremco's

contracts with the Government, whether through its GSA Federal Supply Schedule contract or otherwise, are subject to the requirements of full and open competition. 41 U.S.C. § 253(a).

14.     Tremco provides services to the Government pursuant to various GSA Federal Supply Schedule contracts, including for Facilities Maintenance and Management (Contract # GS-06F-0047R) and for Buildings and Building Materials/Industrial Services and Supplies (Contract # GS-07F-8798D), and on information and belief, through other contracts with Government purchasers.

15.     Categories of commercial products and services offered under Federal Supply Schedule contracts are assigned Special Item Numbers ("SINs"). Pursuant to its GSA Supply Schedule for Buildings and Building Materials, Tremco sold and continues to sell roofing materials, products, and services (SIN 563-4) and warranties (SIN 563-99) to Government purchasers.

16.     Tremco has provided roofing services to numerous government agencies, including but not limited to, the National Institutes of Health; Department of Energy; the Postal Service; the Navy; Internal Revenue Service; Federal Aviation Administration; Federal Bureau of Prisons; the Air Force; the Army; Department of Veterans Affairs; the Marine Corps; the Coast Guard; and the GSA.

17.     Tremco provided and continues to provide roofing materials and services to the Federal Government and to State and Local governments on buildings across the country.

**B.     The GSA Federal Supply Schedule Pricing Requirements**

18.     Under GSA regulations, commercial suppliers' Federal Supply Schedules are to be based on established commercial price lists off of which the Government negotiates to receive

"most favored customer" pricing when compared to ordinary commercial transactions made under similar circumstances. 48 C.F.R. §§ 515.408, 552.212-70, 538.270. Once it is established that a manufacturer's or vendor's products are offered to commercial purchasers in sufficient quantities to establish a market-tested commercial price, GSA's objective is to negotiate for Government purchasers a pricing discount below the vendor's established catalog or market prices. 48 C.F.R. §§ 552.212-70, 538.270.

19.     Once GSA pricing is negotiated, the commercial supplier publishes a list or schedule of prices for products and services offered through the GSA program. Federal agencies rely on these pricing schedules to make purchasing decisions without having to engage in the time-consuming and expensive process of independently determining whether a potential supplier is offering the purchasing agency fair and reasonable pricing.

20.     With respect to any and all of Tremco's responses to solicitations for bids for Government jobs, whether through its GSA contracts or otherwise, Tremco was on notice that the Government purchaser considered the cost to the Government as an evaluation factor. 41 U.S.C. § 253a(c).

21.     In order for the Government to be able to negotiate meaningful terms with a prospective supplier, the supplier must provide the Government with information about how it actually prices its products for non-government purchasers. 48 C.F.R. § 552.212-70.

22.     Pursuant to its GSA contracts, Tremco was required to provide its current published commercial catalogs or price list(s) that form the basis for discounted Government rates.

### C.    Tremco's Failure to Provide Accurate Pricing Information

23.    Tremco negotiated Federal Supply Schedule contract prices with Government agencies and entities based on prices published in Tremco's purported commercial price list. Tremco provided Government purchasers with this list of prices pursuant to its Federal Supply Schedule contracts.

24.    During the time Relator was at Tremco, the company routinely provided the Government with a 13.3% discount below its purported commercial price list.  In addition, Tremco's current Contract # GS-07F-8798D states that Tremco provides Government purchasers with 8% off its commercial price list for installed services.

25.    Tremco fraudulently represented to the Government, as a participant in the GSA program, that it was providing these discounted rates off of Tremco's established commercial prices. However, Tremco did not maintain any reliable structure for pricing its private jobs. Tremco's inconsistency in pricing commercial jobs rendered it unable to truthfully represent that it complied with the GSA "best price" pricing requirements and, in fact, it failed to do so.

26.    Relator's department was responsible for maintaining the Tremco price book. For a Government job, the discount provided to Government purchasers would be applied to the list prices in the Tremco price book.  Once a Government job was priced according to standard list prices, a Tremco customer service manager would apply the standard 13.3% discount.[1]  The customer service division or Tremco's subsidiary, Weatherproofing Technologies, Inc. ("WTI"), acting as the general contractor, would then provide this pricing to the Government purchaser.

---

[1] Tremco's current Contract # GS-07F-8798D provides that Government purchasers will receive an 8% discount from the commercial price list for installed services.

27.     By contrast, with respect to jobs for commercial entities, Tremco discounts were primarily determined by individual field sales representatives who had direct contract and negotiating authority. Tremco salespeople were given authority without authorization from management, to provide private customers with discounts of as much as 30% below the Tremco price book amount, more than double the Government's 13.3% discount. If a sales representative wanted to discount beyond 30%, any Tremco regional sales manager had authority to offer customer discounts that were between 30% and 40%. Tremco discounts to private non-governmental customers that amounted to 40% less than the Tremco price book were also issued but required approval by Tremco's Vice President of Sales or a division president.

28.     Relator was regularly consulted on highly discounted private sales and highly discounted government sales that were not sales to the Federal Government.  Relator was responsible for calculating Tremco's expected profit from such jobs to ensure that Tremco would still make a profit after these large discounts were applied.

29.     Because of broad discretion and flexibility given to Tremco sales personnel to discount prices, Tremco's purported "price list," upon which it based its GSA pricing, did not represent Tremco's actual pricing structure for its customers.

30.     Tremco's entire pricing and commission structure rendered Tremco unable to assure that the Government received the best pricing.  Tremco sales representatives frequently offered prices lower than what was contained on the so-called "price list." Indeed, prices and discounts were in a constant state of fluctuation from job to job.

31.     Tremco did not have sufficient policies or procedures in place regarding pricing and, thus, had no way to assure or even know that the Government was getting the proper

discount relative to commercial customers.  Thus, Tremco failed to provide the United States with the requisite best pricing according to an established price book.

32.     Tremco knew that the Government was not being provided with the same discounts provided to private purchasers. Tremco Roofing Division President, Deryl Kratzer, mentioned to Relator that the company was not supposed to discount prices more than 13.3%, the discount guaranteed to the Federal Government.  On at least two occasions during the time period from 2005 through 2008, Mr. Kratzer expressed concern over the fact that Tremco was providing discounts to large non-Federal Government purchasers that exceeded the Federal Government's 13.3% discount.  Relator reminded Mr. Kratzer that many jobs exceeded the 13.3% discount level because sales representatives have the discretion to discount up to 30% without approval.  Mr. Kratzer responded that there were always "ways around" the Federal Government's preferred pricing requirements.

33.     On at least three occasions, Mr. Kratzer expressed concern to Relator that if "the government" ever audited Tremco's discounting practices, Tremco "would get killed."

34.     In or around 2005, Tremco hired a compliance officer, Angela DiTommaso. Relator was present in a Tremco operations meetings where Ms. DiTommaso commented that she "did not want to know about" how the company was going about providing better pricing to its private customers than it provided to Government purchasers.  On several occasions during operations meetings, Mr. Kratzer commented that it was Ms. DiTommaso's job to keep him "out of jail."

35.     Defendant Tremco presented or caused to be presented to the Government false claims for products and services purchased by the Government pursuant to the GSA's purchasing systems.

11

36.     Tremco's representations and certifications that its Government pricing was based on the pricing it provided its non-Federal Government customers were made with actual knowledge of falsity, deliberate ignorance of the truth or falsity, or in reckless disregard of the truth or falsity.

37.     The Federal Government paid substantially more than it would have were it not for these false representations.

**D.     Tremco's Failure to Provide the Government with Discounts Provided to Non-Government Purchasers**

38.     In addition to the requirement that a supplier's GSA pricing be based on established catalog or market prices and then discounted pursuant to negotiations with the GSA, the supplier must also notify the Federal Government of reductions in the price charged to commercial customers. If a supplier reduces the price it charges its non-Government customers, it must report this reduction or discount and provide the same relative price reduction to the Government. 48 C.F.R. §§ 538.273(b)(2), 552.238-75. This reporting requirement is explicitly incorporated into the Solicitations for Tremco's contracts (Solicitation # 6FEC-E6-030292 and # 7FCI-F8-030056-B).

39.     Despite its obligations and representations that Government customers would receive the most favorable prices and terms, Tremco regularly provided its commercial customers with discounts greater than those offered to Government purchasers, without disclosing these price reductions to the Federal Government.

40.     Tremco salespeople routinely negotiated with private customers and non-Federal Government customers prices that were as much as 30% lower than the prices in the official Tremco price list or catalog. Tremco management approved private discounts of 30 to 40% and

higher. These discounts were in excess of the Government's 13.3% discount. Tremco did not report to the Federal Government these sales that were below the Tremco commercial price list and were below the sales prices provided under Tremco's GSA and Federal Government pricing programs.

41.     Tremco had an established procedure to have sales involving a 40% or higher discount from the Tremco price list reviewed by one of its in-house attorneys, Jim Tierney or Shawn McGraw.  On at least 5 or more occasions, Tremco provided discounts to commercial customers that were greater than 40% below the commercial price list and thus became subject to this process of attorney review.

42.     In addition to consulting on highly discounted private or non-Federal Government sales, Relator also witnessed large discounts provided to private purchasers.

43.     From time to time, Relator was required, as part of warranty adjustments and after roofs were installed, to compile and review the original paperwork for commercial and non-federal jobs that received large discounts.  Relator was never asked to investigate, evaluate, or report whether large discounts in excess of the discounts provided to Government purchasers were in any way improper, to be avoided, or should be reported to the GSA.

44.     Tremco failed to have anyone on its staff who reviewed its sales documents and practices to ensure that the Government received the most favorable pricing and, where Tremco failed to provide such favorable pricing, that the non-complying discounts provided to non-Government purchasers were reported to the Government or the discount provided to Government purchasers.

45.     Tremco created documents showing the discount from the list price for each product to be used on each roofing construction or roofing maintenance job. These Tremco sales

documents for non-Government sales demonstrate that Tremco failed to provide the Government

with the best pricing as to every job where the sales representative exercised discretion to

discount beyond 13.3% and up to 30%, as well as where Roofing Division President Deryl

Kratzer and others approved even larger discounts for non-Government purchases.

46.     Tremco often provided deep discounts to private customers.  For example,

Tremco manufactures and sells a roofing product called PIB, on which it provided large

discounts to non-Government purchasers in 2008. Roofing Division President Kratzer tasked

Relator with creating a program to sell off a massive overstock of PIB at extremely low cost,

with "no rules," as Mr. Kratzer put it, in pricing and selling the inventory.  Under this promotion,

PIB was sold for substantially less than its list price, and Tremco waived other charges normally

included in the cost of installation.  Tremco did not disclose to the Government these deep

discounts on PIB that were provided to non-Government customers.

47.     Tremco's  pricing structure, or lack thereof, resulted in Tremco routinely

providing discounts to private customers without notifying the Government of these lower prices

or providing Government customers with the same discounts.

48.     Defendant Tremco presented or caused to be presented to the Government claims

for products and services purchased by the Government pursuant to or based off of Tremco's

GSA contracts or GSA-negotiated pricing.

49.     Tremco's representations and certifications that it was providing the Government

with the "best value" relative to non-Government customers and that it would report and provide

any additional discounts given to private customers were made with actual knowledge of falsity,

deliberate ignorance of the truth or falsity, or in reckless disregard of the truth or falsity.

50.     The Government paid substantially more than it otherwise would have were it not for Tremco's intentionally false pricing misrepresentations.

**E.      Tremco's Fraudulent Activities to Increase the Cost of Products Sold to the Federal, State, and Local Governments**

**1.     Sales of high-priced brands rather than lower-cost, identical alternatives**

51.     Relator has direct knowledge of Tremco's practice of selling expensive brand-name, top-of-the-line roofing systems and products to the Federal, State, and Local Government purchasers, rather than providing its Government customers with identical lower-cost alternatives, which lack only the fancy names and labels.

52.     Many Tremco products sold under different names and different prices are in fact identical in composition, manufacturing process and location, durability, and all other respects. These product pairs differ only in Tremco name, label, and price. Tremco's internal documents showing product composition demonstrate that the chemical compositions of the so-called "premium" or "superior" products are identical to those of the less expensive "generic" equivalents.  Despite having the same production costs and compositions, the "superior" Tremco product was sold at a substantially higher price than the identical, but more "generic" product.

53.     Tremco's more expensive "superior" or "premium" products and their identical "generic" equivalents are listed below:

| "Superior" Product | Generic Equivalent Product |
| --- | --- |
| Burmastic Adhesive | PowerPly Cold Adhesive |
| Fas-n-Free Adhesive | Elite 100% Solids Insulation Adhesive |
| ELS Roof Cement | Elite Roof Mastic |
| Tremprime WB | Elite Waterbased Primer |

15

| | |
|---|---|
| Thermastic 50 | PowerPly Hot Melt Adhesive |
| Thermglass Type IV | PowerPly Type IV |
| Thermglass Type VI | PowerPly Type VI |
| Rubberized Burmastic | PowerPly Rubberized Adhesive |
| Burmastic Adhesive LV | PowerPly Adhesive LV |

The only difference between the product lines was the name and label on the packages and the prices.

54.     Tremco represented to Government purchasers that these "premium" products were superior, when in fact they were identical to products costing less, often nearly 50% less than the "superior" product.  Tremco frequently marketed and sold the Government these more expensive products that were identical to the lower-priced products.

55.     Tremco violated its contractual obligation to provide the Government with the "best value" by routinely selling Government purchasers higher priced products rather than providing the Government with lower priced products that were identical, except as to their names and product labels.

### 2.     Sales by subsidiaries and subcontractors

56.     Tremco inflated prices to the Government purchasers by utilizing its subsidiary, WTI, as a general contractor on many Government jobs.  Sales through WTI included an additional charge of approximately 25% of the underlying contract services and supplies for work for WTI's services as a general contractor, which is a very high overhead or mark-up charge for a general contractor working on sizeable commercial jobs.

57.     In exchange for contracting with WTI, the only additional benefit that the Government purchaser received was a Tremco-assigned job superintendent and an inspector for

16

these jobs.  However, this was an unnecessary expense because all WTI work was subcontracted

to Tremco-certified contractors who were capable of handling the jobs themselves, without the

WTI "general contractor."

58.     In addition, Tremco utilized partnerships with certain subcontractors to effectively

eliminate competition and increase costs to Government purchasers.  For example, a May 2007

memorandum to Tremco sales staff described how Tremco utilizes its "Service Disabled

Veteran-Owned Small Business Strategic Alliance Team Members" to secure sole-source

contracts from the Department of Veterans Affairs and to avoid competitive bidding.  Tremco

urged its sales force not to quote the Government purchaser a price without first selecting a

Service-Disabled Veteran firm to be its partner as a subcontractor, so that Tremco could increase

its chances of getting the job without any competitive bidding from other firms, thereby

increasing costs to the Government.

### 3.       Over-specification for roofing

59.     Tremco routinely sold unnecessarily upgraded roofing systems to the Federal,

State, and Local Government.  Tremco sales representatives misrepresented that Government

purchasers needed particular upgrades or that particular features and products would create a

safer roof, when in fact these costly upgrades were unnecessary and the increased specifications

would not ensure a safer or higher-functioning roof.  By over-specifying the roofing material

requirements, Tremco "locked-out" competitors who could not fulfill these extraordinary and

unnecessary specifications.  Tremco thereby billed the Government for unnecessary and useless

higher-cost products required to meet unneeded higher quality standards.

60.     Tremco sold the Government products with unnecessarily high specifications for wind uplift, tensile strength (a measurement of resistence to lengthwise stress), and elongation requirements for rubberized asphalt.

61.     Tremco provided model specifications to Federal, State, and Local Government purchasers for their use. Tremco proposed specifications that impeded the likelihood of successful bids by otherwise-qualified competitors, even though the specifications would not improve the quality of the roof nor reduce the cost. Such anti-competitive provisions included terms requiring that the bidder have previously completed 5 similar roofs within 50 miles of the construction site; that the supplier not have been in any business reorganization or bankruptcy within 5 or more years; the manufacturer have owned or leased for at least one year a manufacturing facility that makes roofing products from raw materials (but no requirement that the roofing materials used on the job be from such facilities); the manufacturer have a net worth in excess of $ 50 million; and the use of an approved manufacturer and listing only Tremco as approved; listing within the product specifications only Tremco products, by company name, with the only alternatives (if any) a pre-approved equivalent product to the Tremco product.

62.     Tremco had its own in-house fire-testing facility in Cleveland, Ohio. Until losing the ability in 2007 to use its own facility, Tremco's roofs enjoyed higher fire ratings than its competitors. Tremco falsely claimed that its roofs had high ratings for fire protection qualities.

63.     For many years and until about 2007, Tremco was certified by UL Laboratories to do its own fire testing. Tremco lost its in-house certification and its higher fire code ratings after UL Laboratories independently tested and examined Tremco roofing at its own facility and could not duplicate the Tremco in-house results.

**F.     Defendants' Sale and Installation of Products with Known Defects on Federal Government Roofs and State and Local Government Roofs**

64.     Defendants knowingly installed or caused the installation of thousands of defective roofs on buildings across the country, many in federal Government and State and Local Government buildings, such as post offices, defense installations, schools, hospitals, and municipal buildings.

65.     Since the summer of 2005, Tremco knew that its Burmastic roofing systems installed over insulation board had the potential to fail and that many of these roofs had failed or were failing.

66.     Defendants failed to inform the Government and the State and Local Governments of the defects in roofs installed both before and after Tremco's June 2005 knowledge of the defective roofs and roofing products.

67.     Thermal expansion and contraction of the composite ply roofing system such as Tremco's Burmastic and related systems, causes the composite ply to ridge over the insulation joints.  Eventually, the ridges split, allowing water to enter the roofing system and the building.  In internal documents, Tremco estimated that the failure rates could be as high as 80% in some regions.

68.     Tremco's cold roofs containing any of the following products are defective or will become defective if exposed to cycles of freezing and thawing: Composite Ply; Modified Composite Ply; Premium Composite Ply; Modified Premium Composite Ply; Supreme Composite Ply; and Modified Supreme Composite Ply.

69.     The following are the Tremco roofing systems that contain defective components: Burmastic 200 roof systems; Burmastic 400 roof systems; and Burmastic 500 roof systems.

70.    Tremco was aware of serious defects with the Burmastic composite ply as early as June 2005. In a June 17, 2005 memo, Greg Rudolph, Jr., Tremco Product Manager, described how Tremco's cost-cutting measures with respect to this product had compromised the quality of the felt and lowered the level of asphalt coating. Mr. Rudolph, Jr. recommended that specific changes be made to the product to improve quality.

71.    Tremco was also aware that repairs it was making to these defective composite ply roofing systems were inadequate, as demonstrated by internal Tremco communications with customers who complained about ongoing leaking problems despite repeated repairs to the same problem areas.

72.    Beginning in or around 2005, Relator and another Tremco employee, Steve Laurio, drafted a detailed presentation of the history of composite ply and the resulting problems. Over the years, they edited and updated this presentation as more information became available, and various versions of this document were presented to individuals and groups throughout the Tremco hierarchy, including to Tremco officers and management.

73.    During the Fall of 2008, Relator provided his detailed presentation on the defects in its composite ply roofs and roofing systems to Tremco Roofing Division President Kratzer to summarize the extent of the problems with composite ply, problems that Relator had repeatedly raised with Mr. Kratzer.

74.    Based on his extensive knowledge and study of the problem with composite ply, Relator determined that the only way to deal with the defective composite ply roofs was to proactively address the problems that these roofs had with splitting.

75.     Roofing Division President Kratzer opposed Relator's recommendations that the roofs be repaired prior to costly leaks occurring because he did not want to have to disclose to customers and shareholders the extent of the defects in these roofs.

76.     Defendant RPM had specific knowledge of these Tremco roofing defects and took actions to ensure that Tremco did not advise the Federal Government and State and Local Governments of the roofing defects.  In or around late 2008, Relator had a meeting with Barry Slifstein, an RPM accounting officer, during which Relator described the extent of the defects in composite ply roofs.

77.     As a result of Relator's disclosures to Defendants Tremco and RPM about its defective roofs, a meeting was held in February 2009 with the top executives from Tremco and RPM.  Those present included Frank Sullivan, RPM CEO; Ron Rice, RPM Executive Vice President; and Randy Korach, President of Tremco.  Relator, Roofing Division President Kratzer, and Mr. Slifstein also were present.

78.     At the February 2009 Tremco-RPM meeting, Roofing Division President Kratzer presented misleading information downplaying the extent of the Tremco cold roof defects.  The executives also discussed the potential financial exposure.

79.     At the February meeting on Tremco roof defects, a document was presented projecting the total cost of the repairs to be about $30 million.  The actual repair costs are much higher, probably more than $100 million.

80.     Notwithstanding the fact that the costs associated with correcting the defective roofs were grossly understated, the officials from Tremco and RPM determined in this meeting that they did not want to publicly acknowledge the defects by undertaking proactive repairs because of the effects such public disclosure could have on RPM's share price.

81.     Following this meeting, Relator confronted Mr. Kratzer about misrepresenting and downplaying the extent of the defects.  Relator also discussed with Tremco Global President, Mr. Randy Korach, the full extent of the problems with composite ply and indicated that he intended to leave Tremco because of its refusal to address the problems with this defective product.

82.     Relator continued to be concerned about the potential dangers from the defective roofs. In February 2009, Relator submitted a memorandum to Mr. Kratzer, detailing the known problems with the composite ply roofs and urging that the company make changes to the composition of the materials to correct problems with leaks.  A copy of this memorandum is attached as Exhibit A.

83.     In response to Relator's memorandum, Tremco changed the type of felt material it was using in new roofs and in some repairs. However, based on information and belief, Tremco subsequently resumed using the defective felt in some projects.

84.     Defendants presented or caused to be presented to the Federal Government and the State and Local Governments claims for these defective roofing systems and products and failed to notify the Federal Government and the State and Local Governments about these defects.

## COUNT I
### False Claims Act - Presentation of False Claims
### 31 U.S.C. § 3729(a)(1), 31 U.S.C. § 3729(a)(1)(A), as amended in 2009

85.     The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

86.     Through the acts described above and otherwise, Defendants and their agents and employees knowingly presented or caused to be presented to the United States Government false

or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1), and, as

amended, 31 U.S.C. § 3729(a)(1)(A), including, but not limited to, with regard to the roofs listed

in Exhibit B attached.

87.     As a result of Defendants' conduct, the United States Government has been

harmed by an amount to be determined at trial, and is also entitled to statutory penalties.

**COUNT II**
**False Claims Act - Making or Using False Records or Statements**
**to Cause Claim to be Paid**
**31 U.S.C. § 3729(a)(2), 31 U.S.C. § 3729(a)(1)(B), as amended in 2009**

88.     The allegations of the preceding paragraphs are re-alleged as if fully set forth

below.

89.     Through the acts described above and otherwise, Defendants and their agents and

employees knowingly made, used, or caused to be made or used, false records or statements

material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(2), and, as amended, 31

U.S.C. § 3729(a)(1)(B), in order to get false or fraudulent claims paid and approved by the

United States Government.

90.     As a result of Defendants' conduct, the United States Government has been

harmed by an amount to be determined at trial, and is also entitled to statutory penalties.

**COUNT III**
**False Claims Act - Making or Using False Records or Statements to Conceal,**
**Avoid and Decrease Obligation to Repay Money**
**31 U.S.C. § 3729(a)(7), 31 U.S.C. § 3729(a)(1)(G), as amended in 2009**

91.     The allegations of the preceding paragraphs are re-alleged as if fully set forth

below.

92.     Through the acts described above and otherwise, in violation of 31 U.S.C.

§ 3729(a)(7), and, as amended, 31 U.S.C. § 3729(a)(1)(G), Defendants and their agents and

23

employees knowingly made, used, or caused to be made or used false records and statements to conceal, avoid, and decrease Defendants' obligation to repay money to the United States Government that Defendants improperly or fraudulently received. Defendants also failed to disclose material facts that would have resulted in substantial repayments to the United States Government.

93.     As a result of Defendants' conduct, the United States Government has been harmed by an amount to be determined at trial, and is also entitled to statutory penalties.

### COUNT IV
### CALIFORNIA FALSE CLAIMS ACT
### Cal. Gov't Code § 12650, *et seq*.

94.     The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

95.     This is a civil action brought by Relator, on behalf of the State of California, against Defendants, pursuant to the California False Claims Act, Cal. Gov't Code § 12652(c).

96.     Defendants violated the California False Claims Act, by, *inter alia*, selling the State of California or its subdivisions defective roofing products and installing defective roofing systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing products, including, but not limited to:

    a.    City of Bakersfield, 1715 Chester Ave., Bakersfield
           7800 square feet. Contract Amount: $159,647 (2008);

    b.    City of Cupertino, Blue Pheasant, 22100 Stevens Creek Blvd., Cupertino
           5000 square feet. Contract Amount: $74,500 (2004);

    c.    City of Fountain Valley, Gym and Recreation Building,
           16400 Brookhurst, Fountain Valley
           22,500 square feet. Contract Amount: $193,850 (2005);

d.     City of San Mateo, 2050 Detroit Drive, San Mateo
   2000 square feet.  Contract Amount: $56,834 (2006);

e.     City of Santa Clara
   i.     Eastside Retention Pump B, 5600 LaFayette, Santa Clara
   2300 square feet.  Contract Amount: $19,541 (2002);
   ii.     Montaque Swim Center, 3750 De La Cruz Blvd., Santa Clara
   2000 square feet.  Contract Amount: $18,040 (2002);
   iii.     Westside Retention Pump B, 2900 Old Mountain View, Santa
   Clara.  300 square feet.  Contract Amount $15,017 (2002);
   iv.     Fire Station #7, 1500 Warburton Ave., Santa Clara
   500 square feet. Contract Amount: $76,480 (2006);

f.     City of Santa Cruz
   i.     1125 River St., Santa Cruz
   34,000 square feet (2005);
   ii.     155 Center St., Santa Cruz
   10,500 square feet (2005);

g.     Cupertino Union School District
   i.     Miller Middle School, 6151 Rainbow Ave., Cupertino
   11,100 square feet.  Contract Amount: $250,111 (2003);
   ii.     10301 Vista Dr., Cupertino
   7000 square feet.  Contract Amount: $79,188 (2007);

h.     Franklin McKinley School District
   i.     Sylvandale Middle School, 653 Sylvandale Ave., San Jose
   63,100 square feet.  Contract Amount: $627,305 (2004);
   ii.     J.W. Fair Middle School, 1702 McLaughlin Ave., San Jose
   68,500 square feet.  Contract Amount: $592,695 (2004);
   iii.     Ramblewood School, 1351 Lightland Ave., San Jose
   13,000 square feet.  Contract Amount: $272,169 (2006);

i.     Hillsborough School District
   i.     West School, 376 Barbara Way, Hillsborough
   20,000 square feet (2005);
   ii.     South School, 3000-303 El Cerrito Ave., Hillsborough
   12,300 + 4000 square feet.  Contract Amount: $200,000
   (2005, 2006);

j.     Los Gatos Saratoga Joint Union High School District
   i.     Saratoga High School Gym, 20300 Herriman Ave., Saratoga
   48,100 square feet.  Contract Amount: $388,659 (2003);
   ii.     Saratoga High School BL, 20300 Herriman Ave., Saratoga
   17,412 square feet.  Contract Amount: $162,120 (2004);

k.    Peralta Community College District
      i.    555 Atlantic Ave., Alameda
           16,600 square feet.  Contract Amount: $253,500 (2008);
      ii.    Merritt College Building E, 12500 Campus Dr., Alameda
           19,000 square feet.  Contract Amount: $258,000;
      iii.    555 Ralph Appezzato Memorial, Alameda
           44,291 square feet.  Contract Amount: $920,000;

l.    Perris Elementary School District, 445 South Park Ave., Perris
    28,000 square feet (2005);

m.    San Diego State University
      i.    Calexico Library, Calexico (new) (2004);
      ii.    Business Administration, 5500 Campanile Drive, San Diego
           31,200 square feet.  Contract Amount: $508,000 (2005);
      iii.    Co-generation Roof, 5500 Campanile Drive, San Diego
           4200 square feet.  Contract Amount: $76,500 (2005);
      iv.    Hardy Memorial Tower Flat, 5500 Campanile Drive, San Diego
           4100 square feet.  Contract Amount: $74,550 (2006);
      v.    Love Library Center Roof, 5500 Campanile Drive, San Diego
           32,500 square feet (2008);

n.    Pomona Unified School District
      i.    Allison Elementary School, 1011 Russell Place, Pomona
           41,057 square feet.  Contract Amount: $581,000 (2008);
      ii.    Fremont AF Elect, 725 West Franklin Ave., Pomona
           11,800 square feet.  Contract Amount: $195,539 (2006);
      iii.    Ganesha High School Buildings C, D, E,
           800 S. Gary Ave., Pomona
           126,600 square feet.  Contract Amount: $1,489,000 (2006);
      iv.    Gary High School Gym, 321 West Lexington Ave., Pomona
           15,900 square feet.  Contract Amount: $199,200 (2006);

o.    Portola Valley School District
      i.    4575 Alpine Rd, Portola Valley
           3000 square feet.  Contract Amount: $54,838 (2006);
      ii.    Ormandale School, 200 Shawnee Pass, Portola Valley
           305,500 square feet.  Contract Amount: $269,368 (2005);
      iii.    Woodside School Sellman A, 3195 Woodside Rd., Woodside
           2300 square feet.  Contract Amount: $34,900 (2005);

p.    San Mateo Community College District, 3800 College Drive, San Bruno
    20,000 square feet.  Contract Amount: $218,000 (2007);

q.    Santa Maria Joint Union High School, Pioneer Valley High School,
      675 Fremont St., Santa Maria
      116,500 square feet.  Contract Amount: $992,466 (2004);

r.    Tulare District Healthcare System, Lab Building Lower Roof,
      865 N. Cherry St., Tulare
      26,200 square feet.  Contract Amount: $ 540,000 (2008);

s.    Tulare Joint Union High School District, 3442 E. Bardsley, Tulare
      79,200 square feet.  Contract Amount: $970,000 (2008);

t.    Turlock Unified School District
      i.    Pittman High School Addition, 1574 East Canal Drive, Turlock
            11,900 square feet.  Contract Amount: $13,200 (2004);
      ii.   Pittman High School Classroom, 1574 East Canal Drive, Turlock
            6000 square feet.  Contract Amount: $108,298 (2006);

u.    State of California, 7575 Metropolitan Dr., San Diego
      74,300 square feet (2004).

97.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge, knowingly and intentionally made or caused

to be made, false records or statements to get false or fraudulent claims paid in violation of state

law.

98.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge, presented or caused to be presented to an

officer or employee of the State of California or its political subdivisions false or fraudulent

claims for payment in violation of state law.

99.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge, knowingly or intentionally made or caused

to be made, false records or statements to conceal, avoid, or decrease an obligation to pay or

transmit money to the State of California or its political subdivisions in violation of state law.

27

100.    The State of California, or its political subdivisions, unaware of the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid for defective roofing products or services and paid Defendants an excessive amount for roofing products and services.

101.    As a result of Defendants' actions, the State of California or its political subdivisions has been and continues to be severely damaged.

## COUNT V
## DELAWARE FALSE CLAIMS AND REPORTING ACT
### Del. Code Ann. tit. 6, § 1201, *et seq.*

102.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

103.    This is a civil action brought by Relator, on behalf of the State of Delaware, against Defendants, pursuant to the Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201, *et seq.*

104.    Defendants violated the Delaware False Claims and Reporting Act, by, *inter alia*, selling the State of Delaware or its subdivisions defective roofing products and installing defective roofing systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing products, including, but not limited to:

    a.    County of New Castle Newark Library, 750 Library St., Newark
           28,000 square feet.  Contract Amount: $280,000 (2002);
    b.    Delaware State University, 1200 N. Dupont Highway, Dover
           i.    John B. Price Building
                  27,000 square feet.  Contract Amount: $260,000 (2005);
           ii.    Delaware Hall
                  6,400 square feet.  Contract Amount: $95,000 (2006);
           iii.    Conrad Hall, Cafeteria
                  7,500 square feet.  Contract Amount: $157,000 (2006);

     c.      Red Clay Consolidated School District
              Dickinson High School, 1801 Milltown Rd., Wilmington
              10,000 square feet.  Contract Amount: $100,000 (2007);

     d.      University of Delaware, 222 S. Chapel St.,  Newark
              i.     Mitchell Hall
                    6632 square feet.  Contract Amount: $168,500 (2008);
              ii.    Rodney Dining Hall
                    14,000 square feet.  Contract Amount: $260,650 (2008);
              iii.   Russell Complex
                    3800 square feet.  Contract Amount: $83,900 (2008);
              iv.   Russell Commons Building
                    2400 square feet.  Contract Amount: $60,200 (2006);

     e.      University of Delaware, Harrington Commons, Courtney St., Newark
              37,500 square feet.  Contract Amount: $454,785 (2004);

     f.      University of Delaware, Center for the Arts, 110 Orchard Rd., Newark
              45,000 square feet.  Contract Amount: $722,000 (2006);

     g.      University of Delaware, Otis Smith Laboratory, 700 Pilottown Rd., Lewes
              13,300 square feet.  Contract Amount: $307,865 (2006).

105.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly and intentionally made or caused to be made, false records or statements to get false or fraudulent claims paid in violation of state law.

106.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, presented or caused to be presented to an officer or employee of the State of Delaware false or fraudulent claims for payment in violation of state law.

107.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge, knowingly or intentionally made or caused

to be made, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Delaware in violation of state law.

108.    The State of Delaware, or its political subdivisions, unaware of the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid for defective roofing products or services and paid Defendants an excessive amount for roofing products and services.

109.    As a result of Defendants' actions, the State of Delaware has been and continues to be severely damaged.

**COUNT VI**
**FLORIDA FALSE CLAIMS**
**Fla. Stat. § 68.081, *et seq*.**

110.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

111.    This is a civil action brought by Relator, on behalf of the State of Florida, against Defendants, pursuant to the Florida False Claims Act, Fla. Stat. § 68.081, *et seq*.

112.    Defendants violated the Florida False Claims Act, by, *inter alia*, selling the State of Florida or its subdivisions defective roofing products and installing defective roofing systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing products, including, but not limited to:

    a.    City of Pinellas Park, Technical Services Center,
                6051 78th Ave. N., Pinellas Park
                3500 square feet.  Contract Amount: $120,000 (2006);

    b.    County of Sarasota
        i.    Sarasota County Administration (Burmastic 200),
           1660 Ringling Blvd., Sarasota
           27,456 square feet.  Contract Amount: $799,984 (2005);
        ii.    Health Department Building (Thermastic 100),
           2200 Ringling Blvd, Sarasota
           Contract Amount: $225,000 (2006);

    c.    Okaloosa County Schools
        i.    Baker High School, 1369 14th St., Baker
           79,000 square feet.  Contract Amount: $911,400 (2006);
        ii.    Bob Sikes Elementary School, 425 Adams Drive, Crestview
           Contract Amount: $452,423 (2007);
        iii.    Elliot Point Elementary School, 301 Hughes St., Niceville
           (2004);
        iv.    Valparaiso Elementary School, 379 Edge Ave., Valparaiso
           8,400 square feet.  Contract Amount: $90,778 (2008);

    d.    University of Florida, Shands Hospital and Medical Center
        1600 Southwest Archer Rd., Gainesville
        13,400 square feet.  Contract Amount: $305,057 (2006).

113.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, to an officer or employee of the State of Florida false or fraudulent claims for payment or approval, in violation of Fla. Stat. § 68.081, *et seq.*

114.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, false records or false statements to get false claims paid or approved by the State of Florida, in violation of Fla. Stat. Ann. § 68.081, *et seq.*

115.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Florida, in violation of Fla. Stat. § 68.081, *et seq.*

116.     The State of Florida, or its political subdivisions, unaware of the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid for defective roofing products or services and paid Defendants an excessive amount for roofing products and services.

117.     As a result of Defendants' actions, the State of Florida has been and continues to be severely damaged.

**COUNT VII**
**ILLINOIS' WHISTLEBLOWER REWARD AND PROTECTION ACT**
**740 Ill. Comp. Stat. 175/1, *et seq.***

118.     The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

119.     This is a civil action brought by Relator, on behalf of the State of Illinois, against Defendants, pursuant to the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175/4(b).

120.     Defendants violated the Illinois Whistleblower Reward and Protection Act, by, *inter alia*, selling the State of Illinois or its subdivisions defective roofing products and installing defective roofing systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing products, including, but not limited to:

      a.     Belleville Public School District
          i.     Administration Building. 105 West A St., Belleville
             2400 square feet.  Contract Amount: $36,608 (2005);

        ii.     Douglass Elementary School, 125 Carlyle Ave., Belleville
18,800 square feet.  Contract Amount: $286,700 (2005);

b.     City College of Chicago
      i.     Malcolm X College, 1900 West Van Buren, Chicago
140,000 square feet.  Contract Amount: $1,500,000 (2006);
      ii.     Westside Learning Center,  4624 West Madison, Chicago
23,000 square feet.  Contract Amount:$ 240,000 (2005);

c.     Community Consolidated School District  #62, Des Plaines
      i.     Algonquin Middle School, 767 Algonquin Rd., Des Plaines
39,000 square feet.  Contract Amount: $500,000 (2006);
      ii.     Chippewa Middle School, 123 8th Ave., Des Plaines
61,561 square feet.  Contract Amount: $643,314 (2004);
      iii.    Forest Elementary School,  1375 S. 5th Ave., Des Plaines
26,000 square feet.  Contract Amount: $273,586 (2005);

d.     County of Winnebago, Courthouse Annex, 404 Elm St., Rockford
(Burmastic Restoration).
20,000 square feet.  Contract Amount: $98,000 (2004);

e.     Eswood Community Consolidated School District 269, Eswood
Elementary School, 304 N. Main St., Lindenwood
10,100 square feet.  Contract Amount: $130,220 (2005);

f.     Fox Valley Park District, Vaughan Athletic Center, 2121 W. New Indian
Trail, Aurora
115,000 square feet.  Contract Amount: $701,940 (2005);

g.     Freeburg School District, Freeburg
      i.     Freeburg Elementary School, 408 S. Bellville
22,500 square feet.  Contract Amount: $160,000 (2003);
31,500 square feet.  Contract Amount: $282,000 (2004);
      ii.     Freeburg High School, 401 S. Monroe St.
52,000 square feet.  Contract Amount: $509,630 (2003);
46,000 square feet.  Contract Amount: $451,426 (2004);

h.     New Athens Community Unit School District, Science Room
Roof/Superintendent, 501 Hanft St., New Athens
4,000 square feet.  Contract Amount: $56,500 (2005);

    i.        Nokomis Community Unit School District, Nokomis Elementary School, 511 Oberle, Park Ridge
9,000 square feet.  Contract Amount: $50,000 (2002);

    j.        Rockford Park District, Riverview Ice House, 324 N. Madison St., Rockford
3,000 square feet.  Contract Amount: $ 22,650 (2003);

    k.        Springfield School District, Springfield
        i.        Fairview Elementary School - NW, 2200 East Ridgley Ave., Springfield
4,100 square feet.  Contract Amount:  $68,320 (2005);
        ii.      Lanphier High School Gymnasium, 1300 N. 11th St., Springfield
3,200 square feet.  Contract Amount: $55,609 (2005);

    l.        Triton College, 2000 Fifth Ave., River Grove
        i.        Health Building (H)
16,375 square feet.  Contract Amount: $185,332 (2005);
        ii.      Liberal Arts Building (L)
16,375 square feet.  Contract Amount: $187,734 (2005);

    m.       United Township Schools, United Township High School, 1275 42nd Ave., East Moline
45,500 square feet.  Contract Amount: $612,127 (2003);
68,600 square feet.  Contract Amount: $849,100 (2005);
(2005 for Sections 1, 7, 24, 25 & 2);

    n.        Village of Morton Grove, Pumping Station, 8820 National Ave., Morton Grove
2,000 square feet.  Contract Amount:  $37,483 (2003);

121.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, to an officer or employee of the State of Illinois or a member of the Illinois National Guard false or fraudulent claims for payment or approval, in violation of 740 Ill. Comp. Stat. 175/3(a)(1).

122.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made, used, or caused to be made or used, false records or false statements to get

false claims paid or approved by the State of Illinois, in violation of 740 Ill. Comp. Stat.

175/3(a)(2).

    123.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made, used, or caused to be made or used, false records or statements to conceal,

avoid, or decrease an obligation to pay or transmit money to the State of Illinois, in violation of

740 Ill. Comp. Stat. 175/3(a)(7).

    124.    The State of Illinois, or its political subdivisions, unaware of the falsity of the

claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid

for defective roofing products or services and paid Defendants an excessive amount for roofing

products and services.

    125.    As a result of Defendants' actions, the State of Illinois has been and continues to

be severely damaged.

**COUNT VIII**
**INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT**
**Ind. Code § 5-11-5.5, *et seq.***

    126.    The allegations of the preceding paragraphs are re-alleged as if fully set forth

below.

    127.    This is a civil action brought by Relator, on behalf of the State of Indiana, against

Defendants, pursuant to the Indiana False Claims and Whistleblower Protection Act, Ind. Code §

5-11-5.5-4(a).

    128.    Defendants violated the Indiana False Claims and Whistleblower Protection Act,

by, *inter alia*, selling the State of Indiana or its subdivisions defective roofing products and

35

installing defective roofing systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing products, including, but not limited to:

a. Center Grove Community School, West Grove Elementary School, 5800 W. Smith Valley Rd., Greenwood
48,635 square feet.  Contract Amount: $479,494 (2004);

b. City of Valparaiso Waste Water Treatment Plant, 1251 Joliet Rd., Valparaiso
18,600 square feet.  Contract Amount: $279,000 (2008);

c. Indianapolis Metropolitan School District, North Central High School, 1801 East 86th St., Indianapolis
125,000 square feet.  Contract Amount: $230,669 (2005);

d. Seymour Community School District, Brown Elementary, 550 Miller Ln., Seymour
 43,000 square feet (2006);

e. Smith Green Community Schools, Churubusco Elementary, Middle A, Churubusco
112,555 square feet.  Contract Amount: $1,190,832 (2008).

129.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally presented, or caused to be presented, false or fraudulent claims for payment or approval, in violation of Ind. Code § 5-11-5.5-2(b)(1).

130.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, false records or false statements to get false claims paid or approved by the State of Indiana, in violation of Ind. Code  § 5-11-5.5-2(b)(2).

131.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made, used, or caused to be made or used, false records or statements to conceal,

avoid, or decrease an obligation to pay or transmit money to the State of Indiana, in violation of

Ind. Code § 5-11-5.5-2(b)(6).

132.     The State of Indiana, or its political subdivisions, unaware of the falsity of the

claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid

for defective roofing products or services and paid Defendants an excessive amount for roofing

products and services.

133.     As a result of Defendants' actions, the State of Indiana has been and continues to

be severely damaged.

**COUNT IX**
**MASSACHUSETTS' FALSE CLAIMS ACT**
**Mass. Gen. Laws Ch. 12, § 5(A),** *et seq.*

134.     The allegations of the preceding paragraphs are re-alleged as if fully set forth

below.

135.     This is a civil action brought by Relator, on behalf of the Commonwealth of

Massachusetts, against Defendants, pursuant to the Massachusetts False Claims Act, Mass. Gen.

Laws Ch. 12, § 5C(2).

136.     Defendants violated the Massachusetts False Claims Act, by, *inter alia*, selling the

Commonwealth of Massachusetts or its subdivisions defective roofing products and installing

defective roofing systems on state buildings and misrepresenting falsely the quality of lower-

priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing

products, including, but not limited to:

37

a.    Adams Cheshire Regional School District
      Hoosac Valley Regional High School,125 Savoy Rd., Cheshire
      136,000 square feet. Contract Amount: $1,275,000 (2004);

b.    Beverly Public Schools
      Centerville Elementary School, 17 Hull St., Beverly
      32,000 square feet.  Contract Amount: $432,000 (2003);

c.    Boston Public Schools
      i.     Charlestown High School, 240 & 255 Medford St., Boston
             60,900 square feet.  Contract Amount: $1,138,000 (2003);
      ii.    Emily Fifield Elementary, 25 Dunbar Ave., Dorchester
             12,000 square feet.  Contract Amount: $165,000 (2005);
      iii.   F. V. Thompson School, 100 Maxwell, Dorchester
             35,000 square feet.  Contract Amount: $373,000 (2005);
      iv.    George Lewis Middle School, 131 Walnut Ave., Roxbury
             22,100 square feet.  Contract Amount: $367,000 (2005);
      v.     Harvard-Kent School, 50 Bunker Hill St., Charleston
             45,000 square feet.  Contract Amount: $748,000 (2005);
      vi     Henry Dearborn School, 35 Greenville St., Roxbury
             35,000 square feet.  Contract Amount: $577,000 (2004);
      vii.   John Marshall Elementary, 35 Westville St., Dorchester
             45,000 square feet.  Contract Amount: $684,000 (2005);
      viii.  Madison Park High School, 55 Malcolm X Blvd., Roxbury
             41,700 square feet.  Contract Amount: $437,000 (2005);
      ix.    Martin Luther King Jr. Middle School, 77 Lawrence Ave.,
             Dorchester
             37,500 square feet.  Contract Amount: $466,000 (2005);
      x.     Michael J. Perkins Elementary School, 50 Burke St., South Boston
             9,000 square feet.  Contract Amount: $166,700 (2005);
      xi.    Oliver Wendell Holmes Elementary School, 40 School St.,
             Dorchester
             15,000 square feet.  Contract Amount: $318,000 (2005);
      xii.   Patrick O-Hearn School, 1669 Dorchester Ave., Dorchester
             35,000 square feet.  Contract Amount: $498,000 (2004);
      xiii.  Pauline A. Shaw Elementary School, 429 Norfolk St., Dorchester
             10,000 square feet.  Contract Amount: $138,000 (2004);
      xiv.   Phineas Bates Schools (Main building), 426 Beech St., Roslindale
             9000 square feet.  Contract Amount: $167,000 (2006);
      xv.    Tobin Elementary School, 40 Smith Rd., Dorchester
             900 square feet.  Contract Amount: $43,100 (2006);
      xvi.   Young Achievers Pilot School, 25 Walk Hill St., Jamaica Plain
             16,000 square feet.  Contract Amount: $384,000 (2005);

d.   Bourne Public Schools
     Bourne Senior High School, 175 Waterhouse Rd., Bourne
     10,500 square feet.  Contract Amount: $97,000 (2005),
     19,800 square feet.  Contract Amount: $173,000 (2006);

e.   Brockton Public Schools
     i.    Crosby Administration Building, 43 Crescent St., Brockton
           8,000 square feet.  Contract Amount: $108,000 (2003);
     ii.   Huntington Elementary School, Warren Ave., Brockton
           13,000 square feet.  Contract Amount: $175,500 (2003);
     iii.  Keith Elementary School, Warren Ave., Brockton
           25,000 square feet.  Contract Amount: $337,500 (2003);

f.   City of Boston
     i.    Long Island Hospital, Boston Harbor, 26 Court St., Boston
           1,050 square feet.  Contract Amount: $15,750 (2005);
     ii.   Tunnel Administration, 128 & 152 North St., Boston
           3,100 square feet.  Contract Amount: $60,000 (2006);

g.   City of Chelsea, Fire Alarm Building East, 500 Broadway, Chelsea
     2,869 square feet.  Contract Amount: $86,500 (2005);

h.   City of Everett, Senior High School, 548 Broadway, Everett
     33,980 square feet.  Contract Amount: $284,000 (2004);

i.   City of Fitchburg
     i.    Falulah Water Treatment Plant, 1200 Ridge Rd., Fitchburg
           30,000 square feet.  Contract Amount: $441,194 (2004);
     ii.   Fitchburg Courthouse, 21 Wallce St., Fitchburg
           11,800 square feet.  Contract Amount: $240,000 (2005);

j.   City of Newton, Newton South High School, Parket St., Newton
     58,500 square feet.  Contract Amount: $1,096,000 (2007);

k.   City of Somerset Police Garage, 465 County St., Somerset
     11,000 square feet.  Contract Amount: $83,000 (2004);

l.   Dedham Public Schools
     Dedham Senior High School, 30 Whiting Ave., Dedham
     65,600 square feet.  Contract Amount: $669,350 (2003);

m.   Framingham Board of Education
     Walsh Middle School, 301 Brook St., Framingham
     119,800 square feet.  Contract Amount: $1,467,000 (2005);

n. Haverhill Waste Water Treatment Facility
Process Building #1, 40 South Porter St., Haverhill
16,300 square feet.  Contract Amount: $252,000 (2004);

o. Ipswich Board of Education
Winthrop School: Upper Level, 65 Central, Ipswich
10,400 square feet.  Contract Amount: $237,000 (2003);

p. Jonathon Bourne Public Library, Main
Flat Roof Areas, 19 Sandwich Rd., Bourne
7,600 square feet.  Contract Amount: $139,600 (2003);

q. Lexington Public Schools
Joseph Estabrook Elementary, 117 Grove St., Lexington
18,500 square feet.  Contract Amount: $209,000 (2006);

r. Malden Housing Authority, Entire Roof, 557 Pleasant St., Malden
32,000 square feet.  Contract Amount $501,000 (2004);

s. Massachusetts Bay Community College
 i. Auditorium & Choral Areas, 50 Oakland St., Wellesley Hills
  6,300 square feet.  Contract Amount: $78,000 (2004);
 ii. Cafeteria Roof Area, 50 Oakland St., Wellesley Hills
  3,200 square feet.  Contract Amount: $61,200 (2004);
 iii. Carey Building (Main Roof Area), 50 Oakland St., Wellesley Hills
  16,854 square feet.  Contract Amount: $419,000 (2006);

t. Massachusetts Maritime Academy
 i. Kitchen Building Addition, 101 Academy Dr., Buzzards Bay
  1,100 square feet.  Contract Amount: $28,000 (2006);
 ii. Storer Building Addition, 101 Academy Dr., Buzzards Bay
  12,100 square feet.  Contract Amount: $250,000 (2004);

u. Methuen School District
Donald P. Timony Grammar, 45 Pleasant View St., Methuen
3,200 square feet.  Contract Amount: $54,800 (2005);

v. Middleborough School District
 i. Mayflower Elementary, 31 Mayflower Ave., Middleborough
  22,000 square feet.  Contract Amount: $242,200 (2003);
 ii. Henry B. Burkland School, 41 Mayflower St., Middleborough
  130,000 square feet.  Contract Amount: $1,536,000 (2006);

w.   Milford Public Schools
  i.  Memorial Elementary, 12 Walnut St., Milford
    32,501 square feet.  Contract Amount: $678,000 (2005);
  ii.  Milford Senior High, West Fountain St., Milford
    215,800 square feet.  Contract Amount: $3,149,000 (2003);
  iii.  Woodland Elementary, Northvine St., Milford
    61,000 square feet.  Contract Amount: $1,000,400 (2004);

x.   North Attleboro Public Schools
  i.  Amvet Boulevard School, 70 Amvet Blvd., North Attleboro
    58,900 square feet.  Contract Amount: $637,299 (2004);
  ii.  Roosevelt Avenue School, 108 Roosevelt Ave., North Attleboro
    35,000 square feet.  Contract Amount: $378,701 (2004);

y.   Northern Essex Community College, Bldg. C & Student Union,
  100 Elliott St., Haverhill
  41,800 square feet.  Contract Amount: $625,000 (2006);

z.   Peabody Public Schools, J Henry Higgins Middle School,
  1 Kings St., Peabody
  30,300 square feet.  Contract Amount: $413,000 (2008);

aa.   Somerset Water Treatment Plant, Main Roof, 3249 County St., Somerset
  19,500 square feet.  Contract Amount: $372,000 (2004);

bb.   South Hadley School Department, Mosier Elementary School,
  101 Mosier St., South Hadley
  30,000 square feet.  Contract Amount: $188,000 (2003),
  12,000 square feet.  Contract Amount: $149,000 (2004),
  9,000 square feet.  Contract Amount: $147,000 (2008);

cc.   Town of Dedham, Main Garage, 55 River St., Dedham
  14,500 square feet.  Contract Amount: $220,800 (2005);

dd.   Town of Needham, John Eliot Elementary School,
  135 Wellesley Ave., Needham
  45,000 square feet.  Contract Amount: $404,000 (2004);

ee.   Town of Rockport, Waste Water Treatment Plant,
  30 Pleasant St., Rockport
  1,612 square feet.  Contract Amount: $39,600 (2005);

ff.   Town of Wayland, Wayland Fire Station #2, 38 Cochituate Rd., Wayland
  3,900 square feet.  Contract Amount: $59,711 (2004);

gg.   Town of Wilmington
    i.   Woburn Street School, 315 Woburn St., Wilmington
        10,500 square feet.  Contract Amount: $93,000 (2003);
    ii.   Woburn Street School Lower, 315 Woburn St., Wilmington
        4,100 square feet.  Contract Amount: $41,000 (2004);
    iii.   Town Hall - Lower Main Roof, 121 Glen Rd., Wilmington
        19,320 square feet.  Contract Amount: $216,000 (2004);

hh.   University of Massachusetts
    i.   S-mast Facility Complex, 838 South Rodney French, New Bedford
        14,800 square feet.  Contract Amount: $169,000 (2004);
    ii.   Science & Engineering Building, Amherst
        13,500 square feet.  Contract Amount: $232,000 (2004);
    iii.   Mullins Center,  Hockey L, University Ave., Amherst
        7,500 square feet.  Contract Amount: $104,600 (2004);
    iv.   Butterfield Domitory, 171 Clark Hill Rd., Amherst
        1,500 square feet.  Contract Amount: $49,300 (2005);

ii.   Upper Cape Cod Votech, Upper Cape Cod Regional V,
    220 Sandwich Rd., Bourne
    116,200 square feet (2008).

137.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval, in violation of Mass. Gen. Laws Ch. 12, § 5B(1).

138.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, false records or false statements to get false claims paid or approved by the Commonwealth of Massachusetts or its political subdivisions, in violation of Mass. Gen. Laws Ch. 12, § 5B(2).

139.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

made, used, or caused to be made or used, false records or statements to conceal, avoid, or

decrease an obligation to pay or transmit money to the Commonwealth of Massachusetts or its

political subdivisions, in violation of Mass. Gen. Laws Ch. 12, § 5B(8).

140.    The Commonwealth of Massachusetts, or its political subdivisions, unaware of

the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of

these claims, paid for defective roofing products or services and paid Defendants an excessive

amount for roofing products and services.

141.    As a result of Defendants' actions, the Commonwealth of Massachusetts, or its

political subdivisions, has been and continues to be severely damaged.

**COUNT X**
**NEW JERSEY FALSE CLAIMS ACT**
**N.J. Stat. Ann. § 2A:32C-1, *et seq*.**

142.    The allegations of the preceding paragraphs are re-alleged as if fully set forth

below.

143.    This is a civil action brought by Relator, on behalf of the State of New Jersey,

against Defendants, pursuant to the New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-5(b).

144.    Defendants violated the New Jersey False Claims Act, by, *inter alia*, selling the

State of New Jersey or its subdivisions defective roofing products and installing defective roofing

systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to

fraudulently induce purchase of more expensive, identical Tremco roofing products, including,

but not limited to:

      a.    Brick Township Board of Education
           i.    Brick Township High School, 346 Chambers Bridge Rd., Brick
                45,000 square feet.  Contract Amount: $545,000 (2003);
           ii.   Lake Riviera Middle School, 171 Beaverson Blvd., Brick
                79,320 square feet.  Contract Amount: $1,290,000 (2007);

         iii.     Veterans  Elementary School, 103 Hendrickson St., Brick
                  11,500 square feet.  Contract Amount: $108,000 (2004),
                  50,000 square feet.  Contract Amount: $857,573 (2005);

b.     Berkeley Township Board of Education
       Bayville Elementary, 356 Atlantic City Blvd., Bayville
       53,000 square feet.  Contract Amount: $360,000 (2004);

c.     County of Camden, Administration Building, 1645 Ferry Ave., Camden
       5,500 square feet.  Contract Amount: $97,500 (2004);

d.     Freehold Regional School District:
       i.     Freehold Boro High School, 2 Robertsville Rd., Freehold
            30,000 square feet.  Contract Amount: $390,000 (2004);
       ii.    Freehold Township High School, 281 Elton-Adelphia Rd.,
            Freehold
            32,700 square feet.  Contract Amount: $455,500 (2004);

e.     Howell Township Board of Education
       Newbury School - Upper Level, 179 Newbury Rd., Howell
       32,000 square feet.  Contract Amount: $389,000 (2005);

f.     Little Egg Harbor Township
       Municipal Building - new addition, Radio Rd., Little Egg Harbor
       1,500 square feet.  Contract Amount: $25,000 (2004);

g.     Manalapan/Englishtown Regional Schools
       Middle School, 155 Millhurst Rd., Manalapan
       45,000 square feet.  Contract Amount: $540,000 (2006);

h.     Ocean County
       i.     Ocean County Courthouse, 125 Washington Ave., Toms River
            500 square feet.  Contract Amount: $11,175 (2004);
       ii.    Ocean County Juvenile Detention Center, 230 Sunset Ave.,
            Toms River
             3,000 square feet.  Contract Amount: $35,200 (2005),
            9,500 square feet.  Contract Amount: $119,800 (2007);
       iii.    Ocean County Operations Building, 501 Hickory Lane, Bayville
            9,000 square feet.  Contract Amount: $115,000 (2005);
       iv.    Ocean County Utilities Authority
            Grits & Screen Building, 501 Hickory Lane, Bayville
            6,000 square feet. Contract Amount: $125,000 (2008);
       v.     Ocean County Utilities Authority
            N S Building, 255 Mantalocking, Brick
            1,900 square feet.  Contract Amount: $18,000 (2005);

44

    i.       Ocean County College
           i.     Fine Arts Building, College Drive, Toms River
                    12,000 square feet.  Contract Amount: $131,000 (2004);
           ii.    Gymnasium, College Drive, Toms River
                    12,000 square feet.  Contract Amount: $118,000 (2004);
           iii.   Instructional Building, College Drive, Toms River
                    21,000 square feet (2008);
           iv.   Lecture Hall, College Drive, Toms River
                    6,800 square feet.  Contract Amount: $65,100 (2004);
           v.     New Academic Building, College Drive, Toms River
                    13,500 square feet.  Contract Amount: $183,000 (2008);
           vi.   New Tech Building, College Drive, Toms River
                    12,000 square feet.  Contract Amount: $120,000 (2005);
           vii.  Nurses' Building & Planetarium, College Drive, Toms River
                    18,500 square feet.  Contract Amount: $351,144 (2006);
           viii. Student Center (Lower Section), College Drive, Toms River
                    21,500 square feet.  Contract Amount: $280,000 (2006);

    j.      School District of Chatham
           Chatham High School, 255 LaFayette Ave., Chatham
           19,000 square feet.  Contract Amount: $434,862 (2004);

    k.      Woodbridge Township School District
           Colonia High School, East St., Colonia
           80,000 square feet.  Contract Amount: $770,000 (2005).

145.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of state funds, false or fraudulent claims for payment or approval, in violation of N.J. Stat. Ann. § 2A:32C-3(a).

146.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, false records or false statements to get false claims paid or approved, in violation of N.J. Stat. Ann. § 2A:32C-3(b).

147.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Jersey, in violation of N.J. Stat. Ann. § 2A:32C-3(g).

148.    The State of New Jersey,  or its political subdivisions, unaware of the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid for defective roofing products or services and paid Defendants an excessive amount for roofing products and services.

149.    As a result of Defendants' actions, the State of New Jersey, or its political subdivisions, has been and continues to be severely damaged.

**COUNT XI**
**NEW MEXICO FRAUD AGAINST TAXPAYERS ACT**
**N.M. Stat. § 44-9-1, *et seq*.**

150.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

151.    This is a civil action brought by Relator, on behalf of the State of New Mexico, against Defendants, pursuant to the New Mexico Fraud Against Taxpayers Act, N.M. Stat. § 44-9-5.

152.    Defendants violated the New Mexico Fraud Against Taxpayers Act, by, *inter alia*, selling the State of New Mexico or its subdivisions defective roofing products and installing defective roofing systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing

products, including, but not limited to:

- a. Animas Public Schools
  - i. Animas High School, 1 Panther Blvd., Animas
    22,500 square feet. (2003);
  - ii. Cultural Center & Cafeteria, 1 Panther Blvd., Animas
    12,000 square feet. (2005);

- b. Cooperational Educational Services
  West Las Vegas Middle School, Various Addresses, Las Vegas
  83,830 square feet (2004);

- c. Cuba Independent School District
  Cuba Elementary School, County Rd. 13/building, Cuba
  25,000 square feet. Contract Amount: $99,481 (2004);

- d. Deming Public Schools
  Columbus Elementary, 100 North Boundary, Columbus
  9,400 square feet. (2003);

- e. Eastern New Mexico University, Dorm A, 52 University Blvd., Roswell
  10,000 square feet. Contract Amount: $93,481 (2003);

- f. Gallup-McKinley County Public Schools
  - i. Crownpoint Elementary, Main St. H-1, Crownpoint
    41,300 square feet. Contract Amount: $552,954 (2003);
  - ii. Thoreau Middle School, 64th Ave., Thoreau
    30,000 square feet. Contract Amount: $300,058 (2003);

- g. Moriarty Municipal Schools
  Moriarty High School, 201 Center St., Moriarty
  27,697 square feet (2004);

- h. Portales Municipal Schools
  Annex Building, Roof A, 501 South Abiline, Portales
  22,303 square feet (2004);

- i. Santa Fe Community College
  Units 3 & 4, phase 1 S, 6401 Richards Ave., Santa Fe
  119,505 square feet (2006);

- j. Santa Fe Public Schools
  Bilingual Early Childhood, 430 Lamadera, Santa Fe
  7,000 square feet. Contract Amount: $34,491 (2004);

    k.       Tularosa Municipal Schools
              Tularosa Elementary School, Tularosa (2006);

    l.       Western New Mexico University
              i.    Fact & Chino Buildings, 1000 West College Ave., Silver City
                     20,800 square feet.  Contract Amount: $156,176 (2004);
              ii.   Fleming Hall, 1000 West College Ave., Silver City
                     9,000 square feet (2003).

153.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, to an employee, officer or agent of the state or to a contractor, grantee or other recipient of state funds a false or fraudulent claim for payment or approval, in violation of N.M. Stat. § 44-9-3(A)(1).

154.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim, in violation of N.M. Stat. § 44-9-3(A)(2).

155.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, a false, misleading or fraudulent record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of New Mexico, in violation of N.M. Stat. § 44-9-3(A)(8).

156.    The State of New Mexico,  or its political subdivisions, unaware of the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of these claims,

paid for defective roofing products or services and paid Defendants an excessive amount for roofing products and services.

157.    As a result of Defendants' actions, the State of New Mexico has been and continues to be severely damaged.

## COUNT XII
## NEW YORK FALSE CLAIMS ACT
### N.Y. CLS St. Fin. § 187, *et seq.*

158.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

159.    This is a civil action brought by Relator, on behalf of the State of New York, against Defendants, pursuant to the State of New York False Claims Act, N.Y. CLS St. Fin. § 190.2.

160.    Defendants violated the New York False Claims Act, by, *inter alia*, selling the State of New York or its subdivisions defective roofing products and installing defective roofing systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing products, including, but not limited to:

    a.   Chappaqua Central School District, Chappaqua
        i.   Horace Greeley High School, 70 Roaring Brook Rd.
           19,000 square feet.  Contract Amount: $668,000 (2008);
        ii.   Robert E. Bell Middle School, 50 Senter St.
           2,300 square feet.  Contract Amount: $161,000 (2008);

    b.   Buffalo Public Schools, Public School #90, 50 A St., Buffalo
        54,600 square feet.  Contract Amount: $625,000 (2006);

    c.   City of Buffalo
        i.   City Hall Reconstruction, Niagara Square, Buffalo
           11,600 square feet.  Contract Amount: $210,000 (2004);

       ii.     Department of Public Works, Bailey & Genesee Ave., Buffalo
           16,600 square feet.  Contract Amount: $260,000 (2008);

       iii.    Fire Alarm Office, 332 Ellicott St., Buffalo
           7,000 square feet.  Contract Amount: $129,000 (2007);

       iv.    Fire Engine #1, Ellicott St., South, Buffalo
           11,800 square feet.  Contract Amount $185,000 (2008);

       v.     Fire Engine #4, Abbott Rd. & Hollywood, Buffalo
           6,000 square feet.  Contract Amount: $136,900 (2007);

       vi.    Fire Engine #22, 1522 Broadway, Buffalo
           2,200 square feet.  Contract Amount: $57,000 (2007);

       vi.    Ohio St. Lift Bridge, Ohio St., Buffalo
           1,500 square feet.  Contract Amount: $40,000 (2007);

d.    State University of New York at Buffalo

       i.     Alumni Arena, Buffalo
           197,000 square feet.  Contract Amount: $3,800,000 (2008);

       ii.    Ellicott Complex, Porter Quadrangle, Buffalo
           31,000 square feet. Contract Amount: $751,200 (2005);

       iii.    Ellicott Complex-Richmond, Buffalo
           31,000 square feet.  Contract Amount: $751,200 (2005);

       iii.    Ellicott Complex-Spaulding, Buffalo
           30,000 square feet.  Contract Amount: $400,000 (2003);

e.    County of Erie
      Erie County Home & Infirmary, 11580 Walden Ave., Alden
      55,000 square feet.  Contract Amount: $784,000 (2004);

f.    County of Ontario
      Training Facility, 2962 Country Rd. 48, Canandaigua
      17,500 square feet.  Contract Amount: $212,000 (2005);

g.    County of Schenectady
      Public Works Building: NE, 80 Kellar Ave., Rotterdam Junction
      1,500 square feet.  Contract Amount: $110,000 (2004);

h.    Cuba Rushford Consolidated School District
      Cuba Rushford Elementary, 15 Elm St., Cuba
      16,200 square feet.  Contract Amount: $140,992 (2004);

i.    Dobbs Ferry Union Free School District
      Dobbs Ferry Middle School, 505 Broadway, Dobbs Ferry
      59,029 square feet. Contract Amount: $1,061,100 (2004);

j.   Ellicottville Central School District
     Ellicottville School, 5873 Route 219, Ellicottville
     15,500 square feet.  Contract Amount: $171,000 (2005);

k.   Falconer Central School District
     i.    Falconer Middle/Senior High School, 2 East Ave. North, Falconer
           11,900 square feet.  Contract Amount: $216,412 (2005);
     ii.   Harvey C. Fenner Elementary, 2016 E. Main St., Falconer
           18,300 square feet.  Contract Amount: $350,988 (2005);
     iii.  Paul B.D. Temple Elementary, 3470 Cemetery Rd., Kennedy
           29,200 square feet.  Contract Amount: $531,028 (2005);

l.   Millbrook Central School District
     Millbrook Junior/Senior High School, 43 Alden Place, Millbrook
     73,242 square feet.  Contract Amount: $950,000 (2003);

m.   Oneonta School District:
     i.    Oneonta Middle School, 130 East St., Oneonta
           11,000 square feet.  Contract Amount: $130,000 (2005);
     ii.   Oneonta High School, 130 East St., Oneonta
           11,7000 square feet.  Contract Amount: $1,364,220 (2005);
     iii.  Valley View Elementary, 40 Valley View St., Oneonta
           35,000 square feet.  Contract Amount: $1,900,000 (2004);
     iv.   Riverside Elementary School (T100/Burmastic 200)
           1 Henry St., Oneonta
           45,200 square feet.  Contract Amount: $745,500 (2008);
     v.    Greater Plains Elementary (T100/Burmastic 200)
           60 West End Ave., Oneonta
           51,800 square feet.  Contract Amount: $854,500 (2008);

n.   State of New York
     i.    Department of Transportation (T100/Burmastic)
           334 Violet Ave., Poughkeepsie
           2,300 square feet.  Contract Amount: $120,500 (2008);
     ii.   New York Children and Family Services, Highland Residential
           Center Buildings 35, 38 and 39  (Burmastic 200), 629 N.
           Chodikee Rd., Highland
           29,600 square feet.  Contract Amount: $312,500 (2008);
     iii.  St. Lawrence Psychiatric (BRCP/Powerply Premium)
           1 Chimney Point Rd., Ogdensburg
           110,000 square feet.  Contract Amount: $1,600,000 (2003);
     iv.   Woodbourne Correctional Facility, 99 Prison Rd., Woodbourne
           8,000 square feet.  Contract Amount: $159,000 (2004);

o.   West Seneca Central School District
i.    Capital Improvements 2003 (Burmastic 200)
1397 Orchard Park Rd., West Seneca
10,0000 square feet.  Contract Amount: $1,427,770 (2005);
ii.   Capital Improvements 2003 Burmastic 200)
1397 Orchard Park Rd., West Seneca
80,500 square feet.  Contract Amount: $1,093,407 (2007);

p.   William Floyd School District
i.    William Floyd Elementary, Lawrence Rd., Mastic Beach
45,000 square feet.  Contract Amount: $475,000 (2005);
ii.   William Paca Middle School, 338 Blanco Dr., Mastic Beach
130,000 square feet.  Contract Amount: $1,100,000 (2005).

161.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, false claims for payment or approval, in violation of N.Y. CLS St. Fin. § 189(a).

162.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, false records or false statements to get false claims paid or approved, in violation of N.Y. CLS St. Fin. § 189(b).

163.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New York, or its political subdivisions, in violation of N.Y. CLS St. Fin. § 189(g).

164.   The State of New York, or its political subdivisions, unaware of the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid

for defective roofing products or services and paid Defendants an excessive amount for roofing products and services.

165.    As a result of Defendants' actions, the State of New York, or its political subdivisions, has been and continues to be severely damaged.

**COUNT XIII**
**NORTH CAROLINA FALSE CLAIMS ACT**
**N.C. Gen. Stat. § 1-605, *et seq.***

166.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

167.    This is a civil action brought by Relator, on behalf of the State of North Carolina, against Defendants, pursuant to the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605, *et seq.*

168.    Defendants violated the North Carolina False Claims Act, by, *inter alia*, selling the State of North Carolina or its subdivisions defective roofing products and installing defective roofing systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing products, including, but not limited to:

    a.    City of Wilson, Fire Station #4, Ward Blvd., Wilson
            2,250 square feet.  Contract Amount: $30,208 (2004);

    b.    County of Mecklenburg, Enderly Recreation Center
            2921 Tuckaseegee Rd., Charlotte
            24,900 square feet.  Contract Amount: $200,000 (2005);

    c.    Granville County Schools
            i.    South Granville High School, 701 North Crescent Drive, Creedmoor
                 13,300 square feet.  Contract Amount: $121,600 (2003);

    ii.     JF Webb High School Mathematics, 3200 Webb School Rd., Oxford
          14,300 square feet.  Contract Amount: $161,900 (2005);

    iii.    JF Webb High School, 3200 Webb School Rd., Oxford
          12,864 square feet.  Contract Amount: $138,400 (2004);

    iv.    JF Webb High School, 3200 Webb School Rd., Oxford
          10,174 square feet.  Contract Amount: $112,900 (2004);

    v.     Mary Potter Middle School, 200 Taylor St., Oxford
          14,766 square feet.  Contract Amount: $128,500 (2003);

    vi.    Central Office, 101 Delacroix St., Oxford
          10,164 square feet.  Contract Amount: $113,100 (2004);

    vii.   Toler-Oakhill Elementary, 8176 Highway 96 North, Oxford
          2,628 square feet.  Contract Amount: $33,600 (2003);

d.    Guilford Technical Community College
      Medlin Hall, 601 Highpoint Rd., Jamestown
      17,600 square feet.  Contract Amount: $53,147 (2004);

e.    North Carolina A&T State University
      i.     C. H. Moore Hall, 400 Lindsey St., Greensboro
          11,200 square feet.  Contract Amount: $405,500 (2004);

      ii.    C. H. Moore Hall, 400 Lindsey St., Greensboro
          1,000 square feet.  Contract Amount: $36,200 (2004);

      iii.   Morrison Residence, 201 Laurel St., Greensboro
          6,100 square feet.  Contract Amount: $68,886 (2005);

f.    Sampson Regional Medical Center, 607 Beaman St., Clinton
      250 square feet.  Contract Amount: $21,537 (2004).

169.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, to an officer or employee of the State of North Carolina false or fraudulent claims for payment or approval, in violation of N.C. Gen. Stat. § 1-607(a)(1).

170.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, false records or false statements to get

false claims paid or approved by the State of North Carolina, in violation of N.C. Gen. Stat. § 1-607(a)(2).

171.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of North Carolina, in violation of N.C. Gen. Stat. § 1-607(a)(7).

172.     The State of North Carolina, or its political subdivisions, unaware of the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid for defective roofing products or services and paid Defendants an excessive amount for roofing products and services.

173.     As a result of Defendants' actions, the State of North Carolina has been and continues to be severely damaged.

**COUNT XIV**
**OKLAHOMA FALSE CLAIMS ACT**
**Okla. Stat. tit. 63, § 5053, *et seq.***

174.     The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

175.     This is a civil action brought by Relator, on behalf of the State of Oklahoma, against Defendants, pursuant to the Oklahoma False Claims Act, Okla. Stat. tit. 63, § 5053, *et seq.*

176.     Defendants violated the Oklahoma False Claims Act, by, *inter alia*, selling the State of Oklahoma or its subdivisions defective roofing products and installing defective roofing systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to

fraudulently induce purchase of more expensive, identical Tremco roofing products, including, but not limited to:

      a.     Moore Norman Area Vocational Technical Center
             i.     Main Campus, 4701 12th Ave., N.W., Norman
                   14,685 square feet. Contract Amount: $128,893 (2006);
             ii.    South Penn Campus, 13301 S. Penn, Oklahoma City
                   48,000 square feet. Contract Amount: $486,500 (2005);

      b.     Muskogee Public Schools, Creek Elementary School
              200 S. Country Club Rd., Muskogee
              11,500 square feet (2008);

      c.     Tulsa Public Schools
             i.     Burroughs Elementary, 1924 N. Cincinnati, Tulsa
                   16,000 square feet. Contract Amount: $14,321 (2004);
             ii.    McArthur Elementary, 2182 S. 73rd East Ave., Tulsa
                   43,400 square feet. Contract Amount: $519,000 (2006);
             iii.   Springdale Elementary, 2510 E. Pine St., Tulsa
                   5,000 square feet. Contract Amount: $239,500 (2006).

177.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, to an officer or employee of the State of Oklahoma false or fraudulent claims for payment or approval, in violation of Okla. Stat. tit. 63, § 5053.1(B)(1).

178.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, false records or false statements to get false claims paid or approved by the State of Oklahoma, in violation of Okla. Stat. tit. 63, § 5053.1(B)(2).

179.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, false records or statements to conceal,

avoid, or decrease an obligation to pay or transmit money to the State of Oklahoma, in violation

of Okla. Stat. tit. 63, § 5053.1(B)(7).

180.    The State of Oklahoma,  or its political subdivisions, unaware of the falsity of the

claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid

for defective roofing products or services and paid Defendants an excessive amount for roofing

products and services.

181.    As a result of Defendants' actions, the State of Oklahoma has been and continues

to be severely damaged.

**COUNT XV**
**TENNESSEE FALSE CLAIMS ACT**
**Tenn. Code Ann. § 4-18-101, *et seq.***

182.    The allegations of the preceding paragraphs are re-alleged as if fully set forth

below.

183.    This is a civil action brought by Relator, on behalf of the State of Tennessee,

against Defendants, pursuant to the Tennessee False Claims Act, Tenn. Code Ann. § 4-18-104(c).

184.    Defendants violated the Tennessee False Claims Act, by, *inter alia*, selling the

State of Tennessee or its subdivisions defective roofing products and installing defective roofing

systems on state buildings and misrepresenting falsely the quality of lower-priced roofs to

fraudulently induce purchase of more expensive, identical Tremco roofing products, including,

but not limited to:

    a.    City of Clarksville, E-911 Dispatch Facility, 135 Commerce St.,
        Clarksville.  12,400 square feet.  Contract Amount: $140,500 (2003);

    b.    Clarksville-Montgomery County School System, Clarksville
        i.    Byrnes Darden Elementary School, 609 East St., Clarksville
            42,500 square feet.  Contract Amount: $391,810 (2002);

ii.  Minglewood Elementary, 215 Cunningham Ln., Clarksville
70,700 square feet.  Contract Amount: $489,920 (2002);

iii.  Northeast High School, 3701 Trenton Rd., Clarksville
10,500 square feet.  Contract Amount: $77,979 (2002);

iv.  St. Bethlehem Elementary School, 2450 Old Russellville Pike, Clarksville
71,500 square feet.  Contract Amount: $727,960 (2005);

c.  Metropolitan Knoxville Airport Authority, Knoxville

i.  DHL Building, Alcoa Highway
18,823 square feet (2006);

ii.  UPS Building-McGhee Tys, Alcoa Highway
9,424 square feet (2006);

d.  Tennessee Air National Guard

i.  Building 102, 320 Post Ave., Air National Guard Base
6,400 square feet.  Contract Amount: $76,384 (2004);

ii.  Building 404, 320 Post Ave., Air National Guard Base
20,000 square feet (2003);

iii.  Fuel Tank #3, 320 Post Ave., Air National Base
2,100 square feet (2003).

185.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, to an officer or employee of the State of Tennessee, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of Tenn. Code Ann. § 4-18-103(a)(1).

186.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, false records or false statements to get false claims paid or approved by the state or its political subdivisions, in violation of Tenn. Code Ann. § 4-18-103(a)(1).

187.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay money to the State of Tennessee or its political subdivisions, in violation of Tenn. Code Ann. § 4-18-103(a)(7).

188.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, false or fraudulent conduct, representations, or practices in order to procure something of value directly or indirectly from the state or its political subdivisions, in violation of Tenn. Code Ann. § 4-18-103(a)(9).

189.    The State of Tennessee, or its political subdivisions, unaware of the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid for defective roofing products or services and paid Defendants an excessive amount for roofing products and services.

190.    As a result of Defendants' actions, the State of Tennessee, or its political subdivisions, has been and continues to be severely damaged.

**COUNT XVI**
**VIRGINIA FRAUD AGAINST TAXPAYERS ACT**
**Va. Code Ann. § 8.01-216, *et seq.***

191.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

192.    This is a civil action brought by Relator, on behalf of the Commonwealth of Virginia, against Defendants, pursuant to the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.5, *et seq.*

193.    Defendants violated the Virginia Fraud Against Taxpayers Act, by, *inter alia*, selling the Commonwealth of Virginia or its subdivisions defective roofing products and

59

installing defective roofing systems on state buildings and misrepresenting falsely the quality of

lower-priced roofs to fraudulently induce purchase of more expensive, identical Tremco roofing

products, including, but not limited to:

a.  City of Roanoke, Commonwealth Building
210 Church Ave., S.W., Roanoke
16,089 square feet.  Contract Amount: $243,929 (2006);

b.  City of Virginia Beach
i.  Bow Creek Recreational Center, 3427 Club House Rd.
19,800 square feet.  Contract Amount: $326,897 (2007);
ii.  Building 1001 City Hall, 2401 Courthouse Dr.
10,000 square feet.  Contract Amount: $102,396 (2006);
iii.  Building 1315 Fire Station, 1201 Bayne Dr.
11,000 square feet.  Contract Amount: $100,000 (2006);
Building 1324 Fire Station, 5644 Providence Rd.
11,000 square feet.  Contract Amount: $100,000 (2006);
iv.  Building 1350 Correctional Center,2501 James Madison Blvd.
13,000 square feet.  Contract Amount: $159,900 (2006);
v.  Department of Public Utilities, 3500 Dam Neck Rd.
3,997 square feet.  Contract Amount: $59,965 (2007);
vi.  Free Clinic Building #1, 2569 George Mason Dr.
1160 square feet.  Contract Amount: $17,400 (2007);
vii.  Great Neck Library, 1351 Bayne Dr.
13,000 square feet.  Contract Amount: $ 201,699 (2007);
viii.  Princess Ann Rec Center, 1400 Nimmo Pkwy.
83,700 square feet.  Contract Amount: $821,950 (2007);
ix.  Virginia Beach Convention Center, Birdneck & 19th
46,500 square feet.  Contract Amount:  $746,563 (2007);
x.  Virginia Marine Science, 717 General Booth
64,000 square feet.  Contract Amount: $1,178,000 (2007);

c.  Pittsylvania County Public Schools, School Board Office
39 Bank St., Chatham
18,416 square feet.  Contract Amount: $100,000 (2005);

d.  Richmond Public Schools
i.  Amelia Street Elementary, 1821 Amelia St.
7,500 square feet.  Contract Amount: $69,300 (2003);
ii.  Amelia Street Special EDU, 1821 Amelia St.
2,350 square feet.  Contract Amount: $32,622 (2005);
iii.  Broad Rock Elementary, 4615 Ferguson Rd.
19,500 square feet. Contract Amount: $214,700 (2002);

     iv.     Carver Elementary, 1110 W. Leigh St.
               28,800 square feet. Contract Amount: $264,400 (2001);

     v.     Chimborazo Elementary, 3000 E. Marshall St.
               23,000 square feet.  Contract Amount: $198,625 (2004);

     vi.     Elkhardt Middle School B, 6300 Hull St.
               2,000 square feet. Contract Amount: $17,000 (2002),
               42,000 square feet. Contract Amount: $387,700 (2004);

     vii.     Fairfield Court Elementary, 2510 Phaup St.
               6,307 square feet.  Contract Amount: $103,536 (2008);

     viii.     J. B. Fisher Elementary, 3701 Garden Rd.
               24,000 square feet. Contract Amount: $202,200 (2001);

     ix.     J. L. Francis Elementary, 5164 Shead Rd.
               52,100 square feet. Contract Amount: $355,000 (2000);

     x.     Jeb Stuart Elementary, 3101 Fendall Ave.
               15,297 square feet. Contract Amount: $191,460 (2004);

     xi.     Katherine Johnson Middle, 200 W. Baker St.
               22,000 square feet.  Contract Amount: $184,500 (2003);

     xii.     Mary Scott Elementary, 4011 Moss Side Ave.
               16,300 square feet.  Contract Amount: $270,000 (2007);

     xiii.     Richmond Technical Center,2015 Westwood Ave.
               27,300 square feet. Contract Amount: $227,000 (2001);

     xiv.     Southampton Elementary, 3333 Cheverly Rd.
               39,600 square feet.  Contract Amount: $427,400 (2008);

     xv.     Southampton School Office, 3333 Cheverly Rd.
               2,100 square feet. Contract Amount: $30,700 (2004);

     xvi.     Thomas Henderson Middle, 4319 Old Brook Rd.
               185,000 square feet.  Contract Amount: $1,244,400 (2001);

     xvii.     Westover Hills Elementary, 1211 Jahnke Rd.
               5,500 square feet.  Contract Amount: $41,800 (2002);

     e.     West Point Public Schools, West Point High School, 2700 Mattaponi Ave.
          32,000 square feet.  Contract Amount: $217,700 (2002).

194.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

presented, or caused to be presented, to an officer or employee of the Commonwealth of

Virginia, false or fraudulent claims for payment or approval, in violation of Va. Code Ann. §

8.01-216.3(A)(1).

195.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, false records or false statements to get false claims paid or approved by the Commonwealth of Virginia, in violation of Va. Code Ann. § 8.01-216.3(A)(2).

196.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth of Virginia, in violation of Va. Code Ann. § 8.01-216.3(A)(7).

197.     The Commonwealth of Virginia,  or its political subdivisions, unaware of the falsity of the claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid for defective roofing products or services and paid Defendants an excessive amount for roofing products and services.

198.     As a result of Defendants' actions, the Commonwealth of Virginia has been and continues to be severely damaged.

**COUNT XVII**
**THE CITY OF CHICAGO FALSE CLAIMS ACT**
**Chicago Municipal Code, § 1-21-010, *et seq.***

199.     The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

200.     This is a civil action brought by Relator, on behalf of the City of Chicago, against Defendants, pursuant to the Chicago False Claims Act, Chicago Municipal Code, § 1-21-030.

201.     Defendants violated the Chicago False Claims Act, by, *inter alia*, selling the City

of Chicago or its subdivisions defective roofing products and installing defective roofing systems

on state buildings and misrepresenting falsely the quality of lower-priced roofs to fraudulently

induce purchase of more expensive, identical Tremco roofing products, including, but not limited

to:

    a.    Chicago Park District
- i. Abla-Fosco Community Center, 1312 S. Racine, Chicago 40,000 square feet. Contact Amount: $274,097 (2005);
- ii. Humboldt Park Field House, 1400 N. Sacramento Blvd., Chicago 9,000 square feet. Contract Amount: $150,000 (2005);
- iii. Lafollette Field House, 1333 N. Laramie Ave., Chicago 9,500 square feet. Contract Amount: $90,000 (2005);
- iv. Lindblom Park Field House, 6054 South Damen Ave., Chicago 10,400 square feet. Contract Amount: $200,000 (2006);
- v. McGuane Park, 2901 S. Halsted Ave. 23,000 square feet. Contract Amount: $304,000 (2002);
- vi. McKinley Park Field House, 2210 W. Pershing Rd., Chicago 2,400 square feet. Contract Amount: $26,000 (2005);
- vii. South Shore Cultural Center, 7059 South Shore Drive, Chicago 30,300 square feet. Contract Amount: $345,000 (2005);
- viii. Wentworth Community Center, 3770 S. Wentworth, Chicago 11,300 square feet. Contract Amount: $100,000 (2004);

    b.    Metropolitan Water Reclamation District of Greater Chicago
400 East 130th St., Chicago
17,710 square feet. Contract Amount: $410,036 (2006).

202.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

presented, or caused to be presented, to an official or employee of the city, false or fraudulent

claims for payment or approval, in violation of Chicago Municipal Code, § 1-21-020(1).

203.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

made, used, or caused to be made or used, false records or false statements to get false claims

paid or approved by the city, in violation of Chicago Municipal Code, § 1-21-020(2).

204.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

made, used, or caused to be made or used, false records or statements to conceal, avoid, or

decrease an obligation to pay or transmit money to the city, in violation of Chicago Municipal

Code, § 1-21-020(7).

205.    The City of Chicago, or its political subdivisions, unaware of the falsity of the

claims or statements made by Defendants, and in reliance on the accuracy of these claims, paid

for defective roofing products or services and paid Defendants an excessive amount for roofing

products and services.

206.    As a result of Defendants' actions, the City of Chicago has been and continues to

be severely damaged.

### COUNT XVIII
### Conspiracy to Violate the False Claims Act and the State and City of Chicago
### False Claims Acts

207.    The allegations of the preceding paragraphs are re-alleged as if fully set forth

below.

208.    Defendants conspired with each other and other unnamed co-conspirators to

violate the federal and State and City of Chicago False Claims Acts.

209.    Defendants knowingly and intentionally conspired to defraud the federal

Government and the States or subdivisions of the States and the City of Chicago to get a false

Claim allowed or paid by the federal Government, the States, or subdivisions of the States.

210.    Defendants knowingly or intentionally conspired to submit a false or fraudulent claim or to deceive a Government agency or representative for the purpose of getting a false or fraudulent claim allowed or paid.

211.    Defendants knowingly or intentionally conspired to make, use, or cause to be made or used, false records of statements to conceal, avoid or decrease an obligation to pay or transmit money to the federal Government, the States, subdivisions of the States, and the City of Chicago.

212.    As a result of Defendants' actions, the federal Government, the States, the subdivisions of the States, and the City of Chicago have been and continue to be severely damaged.

**REQUEST FOR RELIEF**

WHEREFORE, Relator Gregory Rudolph requests that judgment be entered against Defendants Tremco, Inc. and RPM International, Inc. ordering that:

1.   Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.*;

2.   Defendants cease and desist from violating:

     a.    California False Claims Act, Cal. Gov't Code § 12650, *et seq.*;

     b.    Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201, *et seq.*;

     c.    Florida False Claims Act, Fla. Stat. § 68.081, *et seq.*;

     d.    Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175/1, *et seq.*;

     e.    Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5, *et seq.*;

    f.       Massachusetts False Claims Act, Mass. Gen. Laws Ch. 12, § 5(A), *et seq.*;

    g.      New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1, *et seq.*;

    h.      New Mexico Fraud Against Taxpayers Act, N.M. Stat. § 44-9-1, *et seq.*;

    i.       New York False Claims Act, N.Y. CLS St. Fin. § 187, *et seq.*;

    j.       North Carolina False Claims Act, N.C. Gen. Stat. § 1-605, *et seq.*;

    k.      Oklahoma False Claims Act, Okla. Stat. Tit. 63 § 5053, *et seq.;*

    l.       Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101, *et seq.*;

    m.     Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1, *et seq.*;

    n.      City of Chicago False Claims Act, Chicago Mun. Code, § 1-21-010, *et seq.*

3.    The Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States Government, the States and their subdivisions, and the City of Chicago have sustained as a result of Defendants' actions, as well as a civil penalty against each Defendant of at least $5,500 for each violation of 31 U.S.C. § 3729 and the State and City of Chicago False Claims Act statutes;

4.    Relator be awarded the maximum amount allowed pursuant to the False Claims Act, 31 U.S.C. § 3730(d), and the State and City of Chicago False Claims Act statutes;

5.    Relator be awarded all costs and expenses of this action, including attorneys' fees, pursuant to 31 U.S.C. § 3730(d) and any applicable State and City of Chicago False Claims Act statutes;

6.    Defendants disgorge all sums by which they have been enriched unjustly by their wrongful conduct; and

7.    The United States, the States and their subdivisions, the City of Chicago, and Relator recover all such other relief as the Court deems just and proper.

Respectfully submitted,

Mark Hanna (DC Bar No. 471960)
Murphy Anderson PLLC
1701 K Street, NW, Suite 210
Washington, DC 20006
Phone: 202-223-2620
Fax: 202-223-8651
*mhanna@murphypllc.com*

Ann Lugbill (DC Bar No. 462850)
Murphy Anderson PLLC
2406 Auburn Avenue
Cincinnati, OH  45219
Phone:  513-784-1280
Fax: 877-784-1449
                    ****
1701 K Street, NW, Suite 210
Washington, DC 20006
Phone: 202-223-2620
Fax: 202-223-8651
*alugbill@murphypllc.com*

Ann-Marie Ahern, *pro hac vice*
McCarthy, Lebit, Crystal & Liffman Co., LPA
101 W. Prospect Avenue, Suite 1800
Cleveland, OH  44115
Phone: 216-696-1422 ext. 244
Fax: 216-696-1210
*ama@mccarthylebit.com*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Complaint was served upon the following as indicated below:

Mark Hanna
Murphy Anderson PLLC
2406 Auburn Avenue
Cincinnati, OH 45219
Phone: 513-784-1280
Fax: 877-784-1449
*mhanna@murphypllc.com*

**Via Regular U.S. Mail on July 15, 2010**

Relator's Counsel

Ann Lugbill
Murphy Anderson PLLC
1701 K Street, NW, Suite 210
Washington, DC 20006
Phone: 202-223-2620
Fax: 202-223-8651
*alugbill@murphypllc.com*

Ann-Marie Ahern
McCarthy, Lebit, Crystal & Liffman Co., LPA
101 W. Prospect Avenue, Suite 1800
Cleveland, OH 44115
Phone: 216-696-1422 ext. 244
Fax: 216-696-1210
*ama@mccarthylebit.com*

**Via Certified Mail with Return Receipt on July 15, 2010:**

U.S. Department of Justice

Honorable Eric H. Holder Jr.
United States Attorney General
Attn: Joyce Branda
United States Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, DC 20044

Ronald C. Machen, Jr.
United States Attorney for
the District of Columbia
555 4th Street, NW
Washington, DC 20530

**Via Certified Mail with Return Receipt on July 15, 2010:**

State Attorneys General

Honorable Edmund Brown, Jr.
Attorney General of California
1300 I Street, Suite 1740
Sacramento, CA 95814

Honorable Joseph "Beau" Biden, III
Attorney General of Delaware
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

Honorable Bill McCollum
Attorney General of Florida
The Capitol, PL 01
Tallahassee, FL 32399-1050

Ms. Alex Sink, Chief Financial Officer
Division of Legal Services
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL 32399

Honorable Lisa Madigan
Attorney General of Illinois
100 West Randolph Street
Chicago, IL 60601

Honorable Greg Zoeller
Attorney General of Indiana
Indiana Government Center South
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204

Mr. Dave Thomas
Indiana Inspector General
150 West Market Street, Room 414
Indianapolis, IN 46204-2810

Honorable Martha Coakley
Attorney General of Massachusetts
One Ashburton Place
Boston, MA 02108-1698

Honorable Paula T. Dow
Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, NJ 08625

Honorable Gary King
Attorney General of New Mexico
P.O. Drawer 1508
Santa Fe, NM 87504-1508

Honorable Andrew M. Cuomo
Attorney General of New York
Department of Law - The Capitol
2nd Floor
Albany, NY 12224

Honorable Roy Cooper
Attorney General of North Carolina
Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629

Honorable W.A. Drew Edmondson
Attorney General of Oklahoma
313 NE 21st Street
Oklahoma City, OK 73105

Honorable Robert E. Cooper, Jr.
Attorney General of Tennessee
P.O. Box 20207
Nashville, TN  37202-0207

Honorable Kenneth T. Cuccinelli II
Attorney General of Virginia
900 East Main Street
Richmond, VA 23219

Mr. Miguel Del Valle
Clerk of the City of Chicago
City Hall, Room 107
121 N. LaSalle Street
Chicago, IL 60602